## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTIN MACKENZIE on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>   - against –<br><br>NATIONAL GRID USA SERVICE COMPANY, INC.,<br><br>                    Defendant. | Case No.<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Kristin MacKenzie, by and through her counsel, on behalf of herself and the Classes defined herein, pleads this Class Action Complaint based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiff's attorneys, against Defendant National Grid USA Service Company, Inc. and its affiliates operating in the United States.

### NATURE OF THE ACTION

1.    Plaintiff brings this action on behalf of herself and Classes of persons who received calls to their cellular telephone numbers without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. §64.1200 (hereinafter referred to as the "TCPA").  Defendant and its agent debt collectors and other agents used automated telephone dialing systems and/or automated or prerecorded voice to call Class members' cellular telephone numbers.  That conduct violates the TCPA.

2.    Defendant is directly liable under the TCPA for all calls made by it for violations

1

of 15 U.S.C. §227(a) and applicable regulations made in this action.

3.      Defendant is also vicariously and/or jointly liable under the TCPA for all calls
made on its behalf for violations of 15 U.S.C. §227(a) and applicable regulations made in this
action, including calls made by debt collectors and third parties who served as Defendant's
express or implied agents and/or whose conduct was ratified by Defendant.

4.      The following debt collectors served as Defendant's agents pursuant to form
contracts during the Class Periods for the TCPA claims alleged herein:  1) NCO Financial
Systems, Inc.; 2) Mercantile Adjustment Bureau, LLC; 3) Allied Account Services; 4) Credit
Protection Association, L.P.; 5) Rochester Credit Center, Inc. d/b/a The Credit Bureau / NACM
New York; 6) Collecto, Inc. d/b/a EOS CCA; 7) I.C. System, Inc.; 8) NRA Group a/k/a
National Recovery Agency, Inc.; 9) Penn Credit Corporation; 10) RUI a/k/a Recovery's
Unlimited East, Inc.; 11) Solomon and Solomon, P.C.; 12) Associated Credit Services, Inc; 13)
Stevens Business Service, Inc.; and 14) Transworld Systems, Inc.

5.      Defendant directed its debt collectors and other agents to make "outbound
call[s]" to obtain monetary payments from call recipients.  "Outbound call messaging is
outsourced and performed by third parties under contract with [the] Companies [*i.e.* National
Grid Companies]."  *See Jenkins v. National Grid*, No. 15-cv-1219, Dkt. 214, ¶ 10.

6.      Plaintiff and members of the National Grid Direct-Dialed Class and National
Grid Agent-Dialed Class was injured as a direct and proximate result of Defendant's and its
agents' TCPA violations.

7.      Plaintiff brings this action for injunctive relief and statutory damages resulting
from Defendant's illegal actions and to permanently enjoin Defendant's violations of the TCPA.

8.      Because Defendant's unlawful acts were and are knowing and willful, Plaintiff

and the Classes are entitled to additional remedies and damages under the TCPA.

## THE PARTIES

9.     Plaintiff Kristin MacKenzie is a resident of Quincy, Massachusetts.

10.     Defendant National Grid USA Service Company, Inc. is organized under the laws of Massachusetts.

11.     Defendant is authorized with the New York Secretary of State to do business in New York and maintains offices in New York.

12.     Upon information and belief, Defendant employs thousands of employees who work in offices located in New York.

13.     Since at least as early as 2008, Defendant has had so-called "Service Contracts" with its affiliated utilities.

14.     The operative Service Agreement is dated November 5, 2012 and is attached hereto as Exhibit 1.

15.     Under the Service Agreement, Defendant agrees to perform a wide array of services to its affiliated utilities in Massachusetts, New York, and Rhode Island.  Some of these services include accounting, auditing, corporate record keeping, customer services, credit and collections, information systems, and procurement.

## SUBJECT MATTER JURISDICTION

16.     Plaintiff invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 47 U.S.C. §227(b)(3)).

17.     This matter in controversy exceeds $5,000,000.00, as each member of the proposed Classes is entitled to up to $1,500.00 in statutory damages for each call that has

violated the TCPA.  Further, Plaintiff alleges Classes that will result in at least one Class member belonging to a different state.  Therefore, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") are present.

## PERSONAL JURISDICTION

18.     This Court possesses specific personal jurisdiction over Defendant pursuant to New York Civil Practice Law and Rules 302(a) and federal constitutional due process.

19.     This Court possesses general personal jurisdiction over Defendant pursuant to New York Civil Practice Law and Rules 301 and federal constitutional due process.

20.     Defendant has sufficient minimum contacts with New York and this District, purposefully availed itself of the privilege of doing business in New York and this District, and possesses such a significant and continuous presence in New York and this District that it is considered at home for the purposes of establishing personal jurisdiction.

21.     Upon information and belief, Plaintiff's injuries resulted in substantial part from acts and omissions by Defendant's personnel based in New York.

## VENUE

22.     Venue is proper in this District under 28 U.S.C. §1391.

23.     Venue is also proper because a related class case involving the same Defendant, policies, practices, and dialing equipment has been pending in this Court since March 2015.  *See Jenkins v. National Grid USA Service Company, Inc.*, No. 15-cv-1219, Dkt. 440.  The Court is familiar with the law and facts relating to Plaintiff's claims.

## THE TELEPHONE CONSUMER PROTECTION ACT

24.     In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

25.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of TCPA Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

26.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also explicitly recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

27.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4]  The FCC "emphasize[d] that prior express consent is deemed to be granted only

---

[1]     Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. §227).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 *et seq.*

[2]     47 U.S.C. § 227(b)(1)(A)(iii).

[3]     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4]     *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 *FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

28.     In the same 2008 Declaratory Ruling, the FCC emphasized that creditors and their third party debt collectors may be held liable under the TCPA for debt collection calls:  "A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call. . . . A third party collector may also be liable for a violation of the Commission's rules."

29.     In a 2013 Declaratory Ruling, the FCC reiterated that creditors and sellers acting as principals are vicariously and jointly liable for violations of the TCPA made by agents of the creditor or seller, regardless of whether the agency is express or implied, and including when agents are vested with apparent authority or when the creditor ratifies the agents' illegal acts.[6] The *Dish Network* ruling provides that, "vicarious seller liability under federal common law agency principles is also available for violations of section 227(b)."[7]  It adds that "allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions."[8]

30.     This Court held that the *Dish Network* Ruling "makes clear that the 2008 FCC Order illustrates vicarious liability" for a creditor who retains the agency services of a debt

---

[5]     *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶10).
[6]     *In re Joint Petition filed by Dish Network, LLC*, ("*Dish Network*"), 28 F.C.C.R. 6574, 6593 ¶¶ 1, 24, 28, 33-48 (2013).
[7]     *Id*. ¶ 33.
[8]     *Dish Network*, ¶ 37.

collector or other third party that violates the TCPA. Dkt. No. 152 at 21.

## STATEMENT OF FACTS

**Defendant Is Responsible for All of National Grid's Direct Outbound Collections Calls.**

31. Defendant's "credit and collections" department performs the following tasks for its affiliated utilities in Massachusetts, New York, and Rhode Island:

    a.    Strategy development, policy ownership, process and procedure monitoring for business process that impact collections and revenue assurance.

    b.    Maintenance of systems that monitor, generate workflows and report on collections and revenue protection.

    c.    Reporting of collection and revenue assurance performance and forecasting future performance.

    d.    Management of the outsourced call center that handles all collection calls.

32. Defendant's credit and collections department makes tens of millions of outbound collections calls targeting consumers who received gas or electric service from Defendant's affiliated utilities in New York, Massachusetts, and Rhode Island. For example, in 2017 Defendant billed its affiliated utilities in Massachusetts, Rhode Island, and New York for the cost of making over 25 million outbound collections calls, as demonstrated by the below chart filed with the Rhode Island Department of Public Utilities.

| SAP Co. Code | SAP Co./Seg | Company Description | FY2017 # of Inbound Collection Calls | FY2017 # of Outbound Collection Calls | FY2017 Percentage |
|---|---|---|---|---|---|
| 5210 | 5210E | Niagara Mohawk Power Corp.- Electric Distr. | 1,817,772 | 6,988,444 | 28.27% |
| 5210 | 5210G | Niagara Mohawk Power Corp. - Gas | 372,315 | 1,431,368 | 5.79% |
| 5220 | 5220G | KeySpan Energy Delivery New York | 275,177 | 3,577,356 | 12.36% |
| 5230 | 5230G | KeySpan Energy Delivery Long Island | 374,371 | 2,462,556 | 9.10% |
| 5310 | 5310E | Massachusetts Electric Company | 1,247,192 | 5,804,069 | 22.63% |
| 5320 | 5320E | Nantucket Electric Company | 5,507 | 23,825 | 0.09% |
| 5330 | 5330G | Boston Gas Company | 318,551 | 1,848,083 | 6.95% |
| 5340 | 5340G | Colonial Gas Company | 40,575 | 470,311 | 1.64% |
| 5360 | 5360E | Narragansett Electric Company | 679,114 | 1,967,332 | 8.49% |
| 5360 | 5360G | Narragansett Gas Company | 279,187 | 1,178,911 | 4.68% |
| | | Totals | 5,409,767 | 25,752,255 | 100.00% |

33.     The outbound calling statistics provided to the Rhode Island Department of Public Utilities were prepared by ServCo employees David Hillery, Douglas Haynes, and Jeffrey Virkler.  Upon information and belief, all these employees work for Defendant in New York.

34.     Defendant also employs Jody Allison as the Vice President of Revenue Cycle Management out of one of its New York offices.  Ms. Allison's role is to develop strategy and processes for Defendant's Billing and Collection organization.  Ms. Allison has submitted reports and given testimony concerning Defendant's collections processes to state utility regulators in Massachusetts, New York, and Rhode Island.  According to testimony and materials submitted by Ms. Allison to different state regulators, Defendant used the same third-party vendor iQor to make outbound calls across different regions and made "auto-dialed" collection calls.

35.     Upon information and belief, Ms. Allison and other employees of Defendant have day-to-day supervision of and decision-making authority over the collections strategies and processes used by Defendant in connection with customers of Defendant's affiliated utilities, including the type of dialing equipment to use, whether to use pre-recorded messages,

8

and which phone numbers to call.

**Defendant Retains and Controls Debt Collectors as Express and Implied Agents to Call Class Members' Cellular Telephones.**

36.     Defendant's "credit and collections" department is also responsible for the management of the final bill process to ensure maximum recovery, including oversight of debt collectors who attempt to collect moneys allegedly owed on final bills.

37.     Defendant is also responsible for procurement for its affiliates and the administration of contracts with third-party vendors, including all contracts between debt collectors and National Grid utilities.  *See* Ex. 1, "List of Certain Services Provided by Service Company" Attachment to Service Agreement, at p. 41 of 44.

38.     Upon information and belief, Defendant required its debt collectors to sign its form *Collection Agency Account Collection Agreement* when it procured third-party collectors pursuant to the Service Agreement.  An exemplar form agreement was submitted by Defendant to the Rhode Island Department of Public Utilities in 2009, and is attached hereto as Exhibit 2. Defendant drafted this form *Collection Agency Account Collection Agreement* and the attached *Scope of Work*.  The *Collection Agency Account Collection Agreement* is supplemented by appendices, including an appendix styled *Scope of Work* that is prepared by National Grid.

39.     The debt collectors selected by Defendant operate as Defendant's express or implied agents when working to collect payment on Defendant's behalf.  Defendant ratified and continues to ratify the acts of its agent debt collectors.

40.     Defendant's senior executives have admitted that they are ultimately responsible for ensuring that their debt collectors comply with Defendant's form contracts and with the law generally.   For example, according to a statement prepared by Defendant's Senior Vice

President for Customer Interactions Management and submitted to the Rhode Island Public Utilities Commission in 2009: "the Company agrees that it is ultimately responsible for the actions of its outside collection agents in terms of interaction with customers. The Company sets standards for its outside collection agents and has the responsibility to ensure its agents are following the fair debt collections practices act. If the Company receives complaints from customers, the Company addresses these directly with the agency." R.I.P.U.C. Docket No. 4065, Responses to Commission Second Set of Data Requests, Request No. 2-53 (July 29, 2009). When Defendant's Senior Vice President prepared this statement, his primary business address was Defendant's office in Brooklyn, New York.

41.     The following debt collectors have served as Defendant's agents during the Class Periods for the TCPA violations claimed in this Complaint:  1) NCO Financial Services, Inc.; 2) Mercantile Adjustment Bureau, LLC; 3) Allied Account Services; 4) Credit Protection Association, L.P.; 5) Rochester Credit Center, Inc. d/b/a The Credit Bureau / NACM New York; 6) Collecto, Inc. d/b/a EOS CCA; 7) I.C. System, Inc.; 8) NRA Group a/k/a National Recovery Agency, Inc.; 9) Penn Credit Corporation; 10) RUI a/k/a Recovery's Unlimited East, Inc.; 11) Solomon and Solomon, P.C.; 12) Associated Credit Services, Inc.; 13) Stevens Business Service, Inc.; and 14) Transworld Systems, Inc.

42.     As the entity responsible for administering contracts with third-party vendors and agents, Defendant is responsible for exercising all powers of its affiliates under The *Collection Agency Account Collection Agreement* and *Scope of Work*, including the power to provide interim instructions to its debt collectors directing their debt collection conduct. Those interim instructions included mandates by Defendant for the debt collectors to skip-trace Class members and to make repetitive telephone calls.

43.     The *Collection Agency Account Collection Agreement* and *Scope of Work* provide that:

a.      Defendant exclusively determines which utility accounts are placed with its debt collectors;

b.      Each debt collector must demonstrate that it can and will perform the debt collection services to Defendant's "satisfaction."  Ex. 2, Collection Agreement, Art. 2.3 (collection agency must "Furnish all necessary professional, managerial, technical, and administrative personnel necessary for the timely prosecution of the Collection Services to Affiliates' satisfaction.").

c.      Defendant requires each collector to provide weekly progress and remittance reports for all placed collection accounts.  Ex. 2, Scope of Work, § 11.

d.      No debt collector may settle any placed collection account without Defendant's approval:  "Agency shall obtain the prior written approval of Company for the settlement of any account regardless of amount due (including interest and costs)."  Ex. 2, Collection Agreement, Art. 2.10.

e.      Defendant may recall any placed collection account in its "sole discretion."  Ex. 2, Scope of Work, § 3.0, § 18.1.

f.      No debt collector may pursue any legal proceedings against a placed collection account, without "first obtaining the written approval of the Company."  Ex. 2, Collection Agreement, Art. 2.12.

g.      Defendant has the right to demand an "Inspection" of any debt collector "to inspect the performance of the Collection Services" unless the collector can demonstrate to National Grid that "the Collection Services are in compliance with the

11

Collection Agreement." Ex. 2, Collection Agreement, Art. 7.2.

       h.     Defendant requires the debt collectors to obtain, at their own cost, a collection bond. Ex. 2, Collection Agreement, Art. 8.

       i.     Defendant requires the debt collectors to obtain, at their own cost, liability insurance. Ex. 2, Collection Agreement, Art. 12.

       j.     Any debt collector retained by Defendant can "be terminated by Company in their sole and exclusive discretion, with or without reason or cause." Ex. 2, Collection Agreement, Art. 15.1.

44.     Further, Defendant controls how its debt collectors perform its collection services, mandating that debt collectors "skip trace" customers' telephone numbers and that its debt collectors make telephone calls:

> Collection Agency shall be responsible for the following tasks and activities in connection with assigned bad debt accounts and collection activity by tier as set forth below:
>
> • Primary Agency-phone and noticing campaign, skip trace
> • Secondary Agency-phone and noticing campaign, periodic skip tracing throughout the program, review for litigation, credit reporting
> • Tertiary Agency-phone and noticing campaign, periodic skip tracing throughout the program, review for litigation, credit reporting

Ex. 2, Scope of Work, § 6.0. These requirements apply regardless of whether the alleged debt is associated with a New York, Massachusetts, or Rhode Island utility.

45.     In addition to retaining its debt collectors as express and implied agents, Defendant vests its debt collectors with apparent authority. It does so by permitting its debt collectors to represent to consumers in letters and during telephone calls that the debt collectors are authorized to act on Defendant's behalf.

46.     Defendant ratified its agent debt collectors' actions by knowingly accepting the

benefits of their conduct (*i.e*., by accepting and retaining monies collected by their debt

collectors from Class members).  The transfer of funds collected by the debt collectors on

Defendant's behalf is mandated by the form *Collection Agency Account Collection Agreement*:

"Agency shall, on the first work day of each week, remit to Affiliates by Agency check all

monies received during the previous week, less any Rate Commissions due and owing to

Agency in accordance with Article 4, 'Compensation' and Appendix A Scope of Work Sections

11.6 and 12.0."  Ex. 2, Collection Agreement, Art. 6.2.

### TELEPHONE CALLS TO PLAINTIFF MacKENZIE'S CELLULAR TELEPHONES

47.     Plaintiff MacKenzie received natural gas and electricity from Defendant's

affiliates, Massachusetts Electric Company and Boston Gas Company, between 2015 and 2017.

These services were for an account tied to her residence in Salem, Massachusetts.  Plaintiff

MacKenzie terminated this account when she moved to Quincy, Massachusetts in January 2018.

48.     In 2018, Defendant's debt collector Stevens Business Service, Inc. ("Stevens"),

while acting as Defendant ServCo's agent, began calling Plaintiff MacKenzie on her cell phone

about an alleged debt in connection with the account for her Salem address.  Plaintiff

MacKenzie found these unwanted calls, which she recalls occurred at least as often as weekly at

one point in 2018, annoying and harassing.  She does not recall consenting to receive automated

phone calls from Defendant or any debt collectors.  Plaintiff told Stevens to stop calling

multiple times, but the unwanted calls from Stevens to Plaintiff MacKenzie's cell phone have

continued despite these requests.  For example:

a.     After previously telling Stevens to stop calling her, the debt collector

called her cell phone again from the phone number (978) 275-9950 on February 6, 2019.

During that call, Plaintiff MacKenzie again told Stevens to stop calling, and that she had

previously told them to stop calling.

b.      On February 15, 2019, Plaintiff MacKenzie's counsel informed

Defendant's counsel that she intended to file a lawsuit against Defendant under the

TCPA, which again made clear that Plaintiff MacKenzie did not consent to receive

automated calls from Defendant or its debt collectors.  Plaintiff MacKenzie's counsel

provided Defendant's counsel with her name, her cell phone number, her account

number, and her prior service address, which was more than enough information for

Defendant to recall Plaintiff MacKenzie's account from Stevens to stop the repeated

unwanted phone calls to Plaintiff MacKenzie's cell phone, or to tell Stevens not to call

Plaintiff MacKenzie.

c.      On March 22, 2019, Stevens again called Plaintiff MacKenzie's cell

phone from the phone number (978) 275-9950.  Plaintiff MacKenzie again told Stevens

to stop calling.

49.     Upon information and belief, all the calls made by Stevens involved the use of an

ATDS under the TCPA.  Stevens admits on its website that it uses "state of the art

computerization" and "dialer technology" and that "[w]e employ the latest dialer technology to

assist our collection staff in finding a good time to reach each customer."  Stevens also admits

on its website that "[a]ny accounts without good phone numbers or good addresses are

immediately transferred to our skip tracing department. . . . Once a good phone number is

established, the account is sent back to collections for follow-up."  Ms. MacKenzie also recalls

that when she would answer calls from Stevens, she would answer "hello" and then hear a

pause followed by a clicking noise before an agent would speak to her.  This is a hallmark of an

automated dialing system that automatically dials phone numbers and routes calls to live agents

14

only after a live human call recipient is detected by the system.

50.     The complete business records in the possession of Defendant and its agents will confirm the full extent of Defendant's and Stevens' automated calls to Plaintiff MacKenzie's cell phone.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff individually brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on her own behalf and on behalf of the following Classes defined as follows:

**1.  National Grid Direct-Dialed Class**:  All persons in the United States who from March 9, 2011 to the present (the "Class Period") (1) received non-emergency calls from Defendant; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

**2.  National Grid Agent-Dialed Class**:  All persons in the United States and its territories who from March 9, 2011 to the present (the "Class Period") (1) received non-emergency calls from any agent retained by Defendant (including debt collectors); (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

Excluded from the Classes are Defendant and its parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are all employees, officers and directors of the debt collectors retained by Defendant.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

52.     The Classes satisfy the FED. R. CIV. P. 23 numerosity, commonality, typicality, adequacy, predominance, superiority and ascertainability requirements.

53.     Plaintiff does not know the exact size or identities of the members of the proposed Classes, since such information is in the exclusive control of Defendant and its debt collectors.  However, based on Defendant's admission that it made over 25 million outbound collections calls in 2017 alone, Plaintiff reasonably believes that the Classes encompass at minimum many thousands of consumers.

54.     Plaintiff and all members of the Classes have been harmed by the unlawful acts of Defendant, which violated their privacy and subjected them to annoying and harassing calls that constitute a nuisance.  The calls made by Defendant and/or its agents were an annoyance, waste of time, depletion of Plaintiff's cellular phone battery, and an intrusion on her cellular telephone that occupied it from receiving legitimate communications.

55.     The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The identities of the Class members can be readily ascertained from Defendant's and its debt collectors' call records.

56.     There are well-defined, nearly identical, questions of law and fact affecting all

parties.  Common question of law and fact raised in this action concerning the Classes' claims include the following:

(a)     Whether the non-emergency calls made to Plaintiff, and members of the Classes' cellular telephone numbers used an automatic telephone dialing system and/or an artificial or prerecorded voice;

(b)     Whether such calls were made by or on behalf of Defendant;

(c)     Whether Defendant retained agents to call Class members;

(d)     Whether Defendant provided express, implied or apparent authority to third parties to call Class members' cellular telephones;

(e)     Whether Defendant ratified the acts of third parties retained by Defendant to call Class members' cellular telephones;

(f)     Whether Defendant violated the TCPA;

(g)     Whether Defendant is vicariously and jointly liable for TCPA violations made by Defendant's agents;

(h)     Whether Plaintiff and the Classes are entitled to damages, declaratory relief and/or injunctive relief as a result of Defendant's violations of the TCPA; and

(i)     Whether Defendant's conduct was knowing or willful.

57.     As people who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each member of the Classes.

58.     Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained able counsel with extensive experience in prosecuting class action claims involving

violations of federal and state consumer protection statutes, including claims under the TCPA. Plaintiff's interests are coincident with, and not antagonistic to, the interests of the Classes.

59.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

60.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendant to comply with the TCPA.  Since the damages, or statutory damages, suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiff will encounter no difficulty in managing this action as a class action.

62.     Defendant has acted and refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief to the Classes. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION

### VIOLATION OF TELEPHONE Consumer PROTECTION ACT

### (PLAINTIFF AND THE NATIONAL GRID DIRECT-DIALED CLASS)

63.     Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

64.     Plaintiff and the members of the National Grid Direct-Dialed Class are "persons" under the TCPA.

65.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if the  recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

66.     The foregoing acts and omissions of Defendant with respect to Plaintiff and the National Grid Direct-Dialed Class violated the TCPA, including but not limited to Section 227(b)(1)(A)(iii).

67.     Each call to Plaintiff's and the National Grid Direct-Dialed Class members' cellular telephone numbers using an "automatic telephone dialing system" or employing a "prerecorded or artificial voice", within the meaning of 47 U.S.C. § 227(b)(1)(A), and without their "prior express consent" violated TCPA Section 227(b)(1)(A)(iii).

68.     Defendant made or caused to be made the telephone calls to Plaintiff and members of the National Grid Direct-Dialed Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator,

and/or receive and store lists of phone numbers, and to dial such numbers.

69.     Defendant likely directly called Plaintiff's cellular telephone number with automated dialers before it referred her account to debt collectors.  Discovery will confirm the full extent of Defendant's direct calls to Plaintiff's cell phone.

70.     Plaintiff and the National Grid Direct-Dialed Class are entitled to pursue claims against Defendant during the Class Periods for an injunction, pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendant's violations of TCPA Section 227(b)(1)(A)(iii).  Plaintiff and the National Grid Direct-Dialed Class seek to enjoin Defendant's violations of the TCPA.

71.     Plaintiff and the National Grid Direct-Dialed Class are entitled to an award of statutory damages of $500.00 for each call in violation of Section 227(b)(1)(A)(iii), pursuant to 47 U.S.C. §227(b)(3)(B).

72.     Defendant's violations of TCPA Section 227(b)(1)(A)(iii) were willful and/or knowing.  As a result, Plaintiff and the National Grid Direct-Dialed Class are entitled to treble damages of up to $1,500.00 for each call in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

73.     Plaintiff and the National Grid Direct-Dialed Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF TELEPHONE Consumer PROTECTION ACT

#### (PLAINTIFF AND THE NATIONAL GRID AGENT-DIALED CLASS)

74.     Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

75.     Plaintiff and the members of the National Grid Agent-Dialed Class are "persons" under the TCPA.

76.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. §227(b)(1)(A).

77.     Defendant is vicariously and jointly liability for the violations of TCPA Section 227(b)(1)(A) made by its agents, including debt collectors and third-parties retained and/or supervised by Defendant to call Class members' cellular telephones.

78.     Defendant acted in concert with its agent debt collectors and other retained-third parties to jointly violate the TCPA Section 227(b)(1)(A).

79.     Defendant provided actual authority to its agent debt collectors and other retained-third parties in form of express and implied acts and authorizations sufficient to form a principal and agent relationship.

80.     Defendant exercised control over the acts and practices of its agent debt collectors and other third parties retained to call Class members' cellular telephone numbers by the use of contracts providing Defendant with control powers, including in *Collection Agency Account Collection Agreements* and *Scope of Work* appendices prepared by Defendant.

81.     By reason of the *Collection Agency Account Collection Agreements* and *Scope of Work* appendices and Defendant's role as the administrator of its affiliates' contracts, Defendant acquired and used the power to provide interim instructions to its debt collector agents.

21

Defendant obtained substantially similar powers in contracts between and among them and other third-parties retained to make calls to Class members on behalf of Defendant.

82.     Defendant ratified the acts of its agent debt collectors and other retained-third parties retained to call Class members' cellular telephone numbers.

83.     The foregoing acts and omissions of Defendant with respect to Plaintiff and the National Grid Agent-Dialed Class violated the TCPA, including but not limited to Section 227(b)(1)(A).

84.     Each call by debt collectors or other retained-third parties serving as Defendant's agents to Plaintiff's and the National Grid Agent-Dialed Class members' cellular telephone numbers using an "automatic telephone dialing system" or employing a "prerecorded or artificial voice," within the meaning of 47 U.S.C. § 227(b)(1)(A), and without their "prior express consent" violated TCPA Section 227(b)(1)(A)(iii).

85.     Defendant made or caused to be made the telephone calls to Plaintiff and members of the National Grid Agent-Dialed Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers.

86.     With respect to Plaintiff, debt collector Stevens called her cell phone, while serving as Defendant's agent, using an automated telephone dialing system, as alleged in paragraphs 47–50 above.

87.     Plaintiff and the National Grid Agent-Dialed Class are entitled to an award of statutory damages of $500.00 for each call made by Defendant's agents in violation of Section 227(b)(1)(A)(iii), pursuant to 47 U.S.C. §227(b)(3)(B).

88.     Defendant's and its agents' violations of TCPA Section 227(b)(1)(A)(iii) were

willful and/or knowing.  As a result, Plaintiff and the National Grid Debt Collector-Dialed Class are entitled to treble damages of up to $1,500.00 for each call in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

89.     Plaintiff and the National Grid Agent-Dialed Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against Defendant, individually, and jointly and severally, as follows:

A.     An order certifying this case as a class action under FED. R. CIV. P. 23(a), (b)(2) and (b)(3), establishing any appropriate Classes the Court deems appropriate, and appointing Plaintiff and her counsel to represent the Classes;

B.     An order declaring Defendant's acts and practices constitute violations of the TCPA;

C.     An order declaring Defendant's agents acts and practices constitute violations of the TCPA, resulting in the vicarious and joint liability of Defendant;

D.     Statutory damages pursuant to the TCPA of $500.00 for each call that violated the TCPA, and up to $1,500.00 for each of Defendant's or its agents' willful and/or knowing violations of the TCPA, as provided by statute;

E.     A permanent injunction to enjoin Defendant's and its agents' violations of the TCPA; and

F.     Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the extent authorized by law.

DATED: April 3, 2019                              Respectfully submitted,


/s/ Jonathan D. Selbin
**LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP**
Jonathan D. Selbin
Douglas I. Cuthbertson
John T. Nicolaou
Avery S. Halfon
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel.  (212) 355-9500
Email:  jselbin@lchb.com
Email:  dcuthbertson@lchb.com
Email:  jnicolaou@lchb.com
Email:  ahalfon@lchb.com

**TUSA P.C.**

Joseph S. Tusa
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100

– and –

150 Motor Parkway, Ste. 401
Hauppauge, NY 11788
Tel. (631) 407-5100
Email:  joseph.tusapc@gmail.com


*Attorneys for Plaintiff
and proposed Class Counsel*

24